AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

| | |
|---|---|
| **FILED BY** ___YR___ **D.C.**<br>**Oct 21, 2020**<br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - Miami | |

# UNITED STATES DISTRICT COURT

for the

Central District of California

UNITED STATES OF AMERICA,

v.

RICHARD AYVAZYAN,
    aka "Iuliia Zhadko," and

MARIETTA TERABELIAN,
    aka "Viktoria Kauichko,"

           Defendants.

| | |
|---|---|
| **FILED**<br>CLERK, U.S. DISTRICT COURT<br>**10/20/2020**<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___SP___ DEPUTY | |

# 20-MJ-3857-OTAZO-REYES

Case No.      2:20-mj-05081-duty

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

    I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

As described in the accompanying attachment, defendants violated the following statute:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud and Bank Fraud |

This criminal complaint is based on these facts:

    *Please see attached affidavit.*

☒ Continued on the attached sheet.

                                                     _/S/_____
                                                   *Complainant's signature*

                                            Justin Palmerton, Special Agent
                                                   *Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        10/20/20                            /S/ CHARLES F. EICK
                                                       *Judge's signature*

City and state:    Los Angeles, California            Hon. Charles Eick, U.S. Magistrate Judge
                                                          *Printed name and title*

Arrest Warrant/Detention

**Complaint Attachment**

**Statement of Facts Constituting the Offense**

[18 U.S.C. § 1349]

Beginning in or around March 2020 and continuing through at least in or around July 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant RICHARD AYVAZYAN, also known as ("aka") "Iuliia Zhadko" ("AYVAZYAN"), and defendant MARIETTA TERABELIAN, aka "Viktoria Kauichko" ("TERABELIAN"), together with others known and unknown, conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud in violation Title 18, United States Code, Section 1344.  The objects of the conspiracy were carried out, and to be carried out, in substance as follows:

Defendants AYVAZYAN and TERABELIAN, and their co-conspirators, would apply for Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") loans using stolen, fictitious, or synthetic identities and businesses. Defendants AYVAZYAN and TERABELIAN, and their co-conspirators, would submit false and fictitious documents in support of the PPP and EIDL loan applications.  Defendants AYVAZYAN and TERABELIAN, and their co-conspirators would direct that the PPP and EIDL loan proceeds be deposited into bank accounts defendants AYVAZYAN and TERABELIAN, and their co-conspirators, controlled.  Defendants AYVAZYAN and TERABELIAN, and their co-conspirators, would use the fraudulently obtained PPP and EIDL loan proceeds for their own personal purposes.

1

## AFFIDAVIT

I, Justin Palmerton, being duly sworn, declare and state as follows:

### I.  INTRODUCTION

1.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2018.  I am currently assigned to a Los Angeles Field Division White Collar Crimes Squad, which is responsible for investigating complex financial crimes.  Prior to being employed by the FBI as a Special Agent, I was employed as a Certified Public Accountant at a public accounting firm.  My roles and responsibilities included financial statement audits, tax return preparation and accounting consulting work.

2.   Since becoming an FBI Special Agent in 2018, I have received 21 weeks of formal training at the FBI Training Academy in Quantico, Virginia.  During the time I have been employed by the FBI, I have participated in investigations relating to wire fraud, mail fraud, and various types of complex financial crimes.  I have participated in many aspects of criminal investigations including reviewing evidence, analyzing financial documents, conducting physical and electronic surveillance, working with informants, and executing search and arrest warrants.

### II. PURPOSE OF AFFIDAVIT

3.   This affidavit is made in support of a criminal complaint against, and arrest warrants for, RICHARD AYVAZYAN (born 1978) ("AYVAZYAN") and MARIETTA TERABELIAN (born 1984)

("TERABELIAN") for violations of 18 U.S.C. § 1349 (Conspiracy to Commit Bank and Wire Fraud).

4.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

5.     From in or around March 2020 through at least in or around July 2020, stolen and/or fake identities were used to fraudulently obtain disaster loans authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act through various lenders and the Small Business Administration ("SBA").  The stolen and/or fake identities used to fraudulently obtain disaster loan proceeds included "Viktoria Kauichko" and "Iuliia Zhadko," among others.  The fraudulently obtained disaster loan proceeds were directed to accounts owned and/or controlled by AYVAZYAN and TERABELIAN, among other co-conspirators, and then used to purchase residential properties in the name of AYVAZYAN and TERABELIAN, who are married, and in the name of "Iuliia Zhadko."  Using disaster loan proceeds as part of a down payment on a residence for an individual's personal benefit is also fraudulent and violates the requirements for PPP and EIDL loans.

2

6.    On or about October 19, 2020, upon being stopped by Customs and Border Protection ("CBP") while re-entering the United States at the Miami International Airport, AYVAZYAN was found to be in possession of contraband, including credit cards in the name of "Iuliia Zhadko" and "Viktoria Kauichko," as well as a digital photograph of a California driver's license in the name of "Iuliia Zhadko."  TERABELIAN was found to be in possession of contraband, including at least one credit card in the name of "Viktoria Kauichko."

## IV. STATEMENT OF PROBABLE CAUSE

7.    Based on witness interviews I have conducted, my review of documents obtained from third parties, reports of interviews conducted by other law enforcement officers, conversations with other law enforcement officers, and publicly filed documents, I know the following:

**A.    The Paycheck Protection Program ("PPP")**

8.    The CARES Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program,  which is referred to as the PPP.  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

9.   In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

10.   A PPP loan application must be processed by a participating financial institution (the lender).  If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

11.   PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within

4

a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

**B.    The Economic Injury Disaster Relief Program ("EIDL")**

12.   The EIDL program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

13.   The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of the advance is determined by the number of employees the applicant certifies having.  The advances do not have to be repaid.

14.   In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

15.   EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application is

approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above.  Any funds issued under an EIDL or advance are issued directly by the SBA.  EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

   **C.   Fraudulently Obtained Disaster Loan Proceeds Used to Purchase Real Estate in the Name of AYVAZYAN and TERABELIAN**

   16.   Based on my review of loan documents provided by the SBA, I know that on or about June 15, 2020, the SBA received an application in the name of Timeline Transport, Inc. ("Timeline Transport") seeking an EIDL loan in the amount of $150,000.  The application was submitted in the name of Iuliia Zhadko via the SBA's online portal.

   17.   In the application, an individual purporting to be Zhadko represented that, as of January 31, 2020, Timeline Transport employed 22 individuals and had gross revenues of $1,601,840.  "Zhadko" further represented that he was the Chief Executive Officer ("CEO") and that he had owned Timeline Transport since 2016.  The Employer Identification Number ("EIN") listed for Timeline Transport on the loan application is 85-0925228.

   18.   The SBA approved Timeline Transport's application and funded the loan.  On or about June 22, 2020, the SBA wired

$149,900 to a bank account at Financial Institution 1 ending in 0172, for which "Iuliia Zhadko" was the sole signatory.

19.    The government's investigation has revealed that Timeline Transport's application to the SBA contained materially false and misleading information.  For example:

     a.    The application states that Timeline Transport had 22 employees as of January 31, 2020.

     b.    Based on my review of publicly available filings with the California Secretary of State, I know that Timeline Transport was first registered on May 1, 2020.

     c.    Based on my review of records provided by the State of California's Employment Development ("CA EDD"), I know that CA EDD  was unable to locate any record of Timeline Transport having employees in 2019 or 2020.

     d.    The application states that the EIN for Timeline Transport is 85-0925228.  Based on information provided to me from other law enforcement agencies, I know that the earliest an "85" EIN prefix could be issued online was on March 23, 2020.

     e.    The Internal Revenue Service ("IRS") has confirmed that there is no record of Timeline Transport filing employment tax or federal income tax returns with the IRS in 2019.

20.    "Iuliia Zhadko" appears to be a fake or synthetic[1] identity used by AYVAZYAN.  Among other things, law enforcement

_____

     [1] Synthetic identities are false identities created with certain key details, such as personally identifiable information or Social Security numbers stolen from real people. Based on my

7

agents involved in this investigation have not been able locate
any record of a "Iuliia Zhadko" in California Department of
Motor Vehicles' ("CA DMV") records.  Nonetheless, as discussed
below, AYVAZYAN was found in possession of digital image of a
purported California Driver's License ("CADL") in the name of
"Iuliia Zhadko."  In addition, AYVAZYAN possessed credit cards
in the name of "Iuliia Zhadko."

21.  The application directed the EIDL loan proceeds to be
sent to a bank account at Financial Institution 1 ending in
0172.  Based on bank records from Financial Institution 1, I
know that the account ending in 0172 was only opened on May 4,
2020.  On or about June 24, 2020 -- just two days after the EIDL
loan proceeds were received on June 22, 2020 -- a $110,000 wire
was sent from the account ending 0172 to Encore Escrow.  The
entirety of the $110,000 appears to have been derived from the
EIDL funds Timeline Transport obtained on June 22, 2020.

22.  I reviewed records provided by Encore Escrow and
determined that the $110,000 wired from the account ending in
0172 went into an escrow account to fund a portion of a down-
payment on the purchase of a residential property at Address 1
in Tarzana, California.  The purchase price of this property was
$3,250,000.  An e-mail sent from an individual identifying
himself "Richard Ayvazyan" to the escrow agent on or about June
24, 2020, stated: "This one went through for 65k. The other one

---

training and experience, these false identities are used to
defraud financial institutions, government agencies, or
individuals.

for 110k I don't have confirmation yet. I will send that over as soon as I get it."

23.   Based on my review of records provided by Encore Escrow, the residential property at Address 1 was purchased in the names of AYVAZYAN and TERABELIAN.

24.   My review of records provided by Encore Escrow further revealed that, in addition to the $110,000 wire from the 0172 account at Financial Institution 1, on or about June 22, 2020, a $565,000 wire transfer was sent from the bank account at Financial Institution 2 ending in 1475 to Encore Escrow.

25.   Based on my review of bank records provided by Financial Institution 2, I know that TERABELIAN was the only signatory on the account ending in 1475.

26.   Bank records for TERABELIAN's account at Financial Institution 2 further revealed that the funds for the $565,000 wire transfer came from approximately nine preceding wire transfers to TERABELIAN's account.  Several of these preceding wire transfers were made from bank accounts that had recently received disaster loan funds.  For example:

a.   Based on records provided by Lender 3, on or about May 3, 2020, Person 1 applied for a PPP loan in the amount of $113,750 on behalf of G&A Diamonds.  Lender 3 approved the application and on or about May 5, 2020, funded the loan by wiring $113,750 to G&A Diamonds' bank account at Financial Institution 4 ending 1964.

b.   Based on records provided by the SBA, on or about April 8, 2020, Person 1 applied for an EIDL loan in the amount

of $145,000 on behalf of G&A Diamonds.  The SBA approved the
application and on or about June 16, 2020, funded the loan by
wiring $144,900 to G&A Diamonds' bank account at Financial
Institution 4 ending 1964.  G&A Diamonds did not use the PPP or
EIDL funds to pay employees.  Instead, on or about June 19,
2020, Person 1 wired $100,000 from the account at Financial
Institution 4 ending in 1964 to TERABELIAN's account at
Financial Institution 2 ending 1475.

          c.   Based on my review of loan documents provided by
the SBA, I know that on or about June 2, 2020, the SBA received
an application in the name of Redline Auto Collision ("Redline
Auto Collision") seeking an EIDL loan in the amount of $150,000.
The application was submitted by Person 2.

          d.   On or about June 8, 2020, the SBA approved the
application and funded the loan by wiring $149,900 into an
account held at Financial Institution 5 ending in 1732.  Based
on a review of records provided by Financial Institution 5, I
know that Person 2 is the sole signatory on this account.
Redline Auto Collision did not use the EIDL loan to pay
employees but instead wired $150,000 to TERABELIAN's account at
Financial Institution 2 ending 1475, on or about June 17, 2020.

          e.   Using disaster loan proceeds as part of a down
payment on a residence for an individual's personal benefit is
fraudulent and violates the requirements for PPP and EIDL loans.

**D.    Fraudulently Obtained PPP Loan Proceeds Used to Purchase Real Estate in the Name of "Zhadko"**

27.    Based on my review of loan documents provided by the SBA and Lender 1, which is an FDIC-insured financial institution, I know that on or about July 13, 2020, Lender 1 received a PPP loan application in the name of Runyan Tax Services, Inc. ("Runyan Tax Services") seeking a PPP loan in the amount of $276,653.  The application was submitted by an individual purporting to be "Viktoria Kauichko."  "Kauichko" purported to be the CEO and 100% owner of Runyan Tax Services and represented that Runyan Tax Services employed 22 individuals as of January 31, 2020.

28.    In support of the application, an individual purporting to be "Kauichko" submitted a copy of her CADL with the license number D3257870.

29.    Lender 1 approved Runyan Tax Services' application and funded the loan.  On or about July 21, 2020, Lender 1 sent a wire in the amount of $276,653 to a bank account at Financial Institution 2 ending in 9700, for which "Viktoria Kauichko" was the sole signatory.

30.    The government's investigation has revealed that Runyan Tax Service's application to the SBA contained materially false and misleading information.  For example:

a.    The application states that Runyan Tax Service had 22 employees as of January 31, 2020.  Information provided by CA EDD show that no employment records exist for Runyan Tax Services for 2019 and 2020.

11

b.   The CADL provided by "Kauichko" in support of the application is fake.  A review of records provided by CA DMV revealed that there was no CADL for a Viktoria Kauichko and that the CADL number listed on the license provided by "Kauichko" is actually registered to a different individual.

31.   Based on bank records provided by Financial Institution 2, I know that the account ending in 9700 was only opened on July 1, 2020 (*i.e.*, less than two weeks before the individual purporting to be "Kauichko" submitted the PPP loan application for Runyan Tax Services).

32.   Based on bank records provided by Financial Institution 2, on July 23, 2020, a wire transfer in the amount of $238,614 was sent from the bank account at Financial Institution 2 ending in 9700 to Beverly Hills Escrow.  The entirety of the $238,614 wire transfers appears to have derived from the $276,653 in PPP loan proceeds Runyan Tax Services received on July 21, 2020.

33.   After reviewing records provided by Beverly Hills Escrow, I learned that the $238,614 wire was used for the down payment on a property at Address 2 in Glendale, California being purchased by "Iuliia Zhadko" for approximately $1,000,000.

**E.    Fraudulent PPP Application Submitted on Behalf of Top Quality Contracting Using a Stolen Identity**

34.   Based on my review of loan documents provided by the SBA and Lender 2, also an FDIC-insured financial institution, I know that on or about April 30, 2020, Lender 2 received a PPP loan application in the name of Top Quality Contracting ("TQC"),

seeking a PPP loan in the amount of $130,000.  The application was submitted by an individual purporting to be Victim 1.

35.   The application represented that Victim 1 was TQC's sole owner, that the average monthly payroll was $52,000, and that TQC had 12 employees.

36.   In support of the application, the individual purporting to be Victim 1 submitted: (i) an IRS Form 940 purportedly prepared by Victim 1 listing TQC's EIN as 82-5088385; and (ii) a purported copy of Victim 1's CADL with the CADL number F0059222.

37.   Lender 2 approved TQC's application and funded the loan.  On or about May 8, 2020, Lender 2 wired $130,000 to a bank account at Financial Institution 3 ending in 3517.  Based on bank records provided by Financial Institution 3, the account was a business checking account titled "Iuliia Zhadko dba Top Quality Contracting."  The signatories on the account were "Iuliia Zhadko" as TQC's sole owner and Victim 1 as a secondary signer.

38.   The government's investigation has revealed that TQC's application to Lender 2 contained materially false and misleading information.  For example:

a.   The CADL for Victim 1 submitted with TQC's application is fake and did not match CA DMV's records.

b.   Information provided by  CA EDD shows that no employment records existed for TQC for 2019.

c.   The IRS has indicated that the EIN number listed in the Form 940 submitted in support of TQC's PPP loan

application is incorrect, and confirmed that there is no record of TQC filing employment tax or federal income tax returns with the IRS in 2019.

39.   Upon being interviewed by law enforcement, Victim 1 stated that he had not applied for any PPP loans and had not authorized anyone to apply for a PPP loan on his or TQC's behalf.  Victim 1 did not recognize the PPP loan application submitted to Lender 2 and had not applied for any type of government assistance.  According to Victim 1, TQC was a sole-proprietorship and did not have any employees.  In addition, Victim 1 did not recognize the CADL submitted with the application.  Victim 1 also stated that he had not opened the bank account at Financial Institution 3 ending in 3517.

**F.  Other Disaster Loan Applications Submitted in the Names of "Zhadko," "Kauichko" and Victim 1**

40.   In addition to the disaster loan applications described above, based on information obtained from the SBA, several other PPP and EIDL loan applications were submitted in the names of "Zhadko" and "Kaiuchko," including:

| Company | Applicant | Approx. Application Date | Amount | Lender | Status |
|---------|-----------|-------------------------|--------|--------|--------|
| Timeline Transport | Iuliia Zhadko | 05/04/2020 | $113,750 | Lender 2 | Cancelled |
| Timeline Transport | Iuliia Zhadko | 06/25/2020 | $122,400 | Lender 2 | Approved |
| Timeline Transport | Iuliia Zhadko | 07/01/2020 | $122,400 | Lender 4 | Not Disbursed |

| TQC | Iuliia Zhadko | 04/13/2020 | $185,000 | Lender 5 | Approved |
| TQC | Iuliia Zhadko | 04/08/2020 | $185,000 | Lender 6 | Withdrawn |
| TQC | Iuliia Zhadko | 03/30/2020 | $112,100 | SBA | Approved |
| Classic Nursery | Iuliia Zhadko | 05/26/2020 | $150,000 | SBA | Cancelled |
| Viktoria Kauichko | Viktoria Kauichko | 07/01/2020 | $150,000 | SBA | Approved |
| Journeyman Construction | Viktoria Kauichko | 05/19/2020 | $150,000 | SBA | Approved |
| Fiber One Media | Viktoria Kauichko | 06/15/2020 | $150,000 | SBA | Approved |
| Fiber One Media, Inc. | Viktoria Kauichko | 06/17/2020 | $150,000 | SBA | Approved |
| Fiber One Media, Inc. | Viktoria Kauichko | 06/17/2020 | $276,652 | Lender 7 | Cancelled |
| Fiber One Media, Inc. | Viktoria Kauichko | 04/15/2020 | $130,000 | Lender 5 | Approved |
| Fiber One Media, Inc. | Viktoria Kauichko | 05/01/2020 | $130,000 | Lender 2 | Cancelled |

## G. CBP Stop at Miami International Airport

41. Based on my discussions with CBP officers and other federal law enforcement agents in Miami, Florida, I understand that on October 19, 2020, AYVAZYAN and TERABELIAN re-entered the United States at Miami International Airport as they returned from a trip to Providenciales, which is a resort island in Turks and Caicos. AYVAZYAN and TERABELIAN were subject to a border stop by CBP, during which they were searched for contraband. Among other things, CBP's search revealed that AYVAZYAN was in possession of credit cards in the names of "Viktoria Kauichko" and "Iuliia Zhadko." During a manual search of AYVAZYAN's

15

cellphone for digital contraband, CBP also discovered a digital image of a CADL in the name of "Iuliia Zhadko" bearing AYVAZYAN's address.  CBP's search further revealed that TERABELIAN was in possession of at least one credit card in the name of "Viktoria Kauichko."  CBP also conducted a manual search of TERABELIAN's cellphone for digital contraband and discovered text messages in which TERABELIAN appeared to be using the identity of "Viktoria Kauichko" to communicate with others.

### G.   Prior Convictions

42.   Based on my review of public court records, I know that AYVAZYAN and TERABELIAN were previously convicted of violation of 18 U.S.C. § 371 (Conspiracy to Commit Bank Fraud) in the Central District of California in 2012, <u>United States v. Ayvazyan, et al</u>, No. SA CR 11-180-CJC.

* * * *

43.   Based on the above information, there is probable cause to believe that AYVAZYAN and TERABELIAN together, and with others known and unknown, knowingly combined, conspired, confederated, and agreed to submit, and caused to be submitted, fraudulent loan applications to various financial institutions and the SBA, seeking funds through the PPP and EIDL programs, and improperly used those funds for their own personal benefit rather than for the business expenses for which the loan applications certified they would be used.

## V.  <u>CONCLUSION</u>

44.  For all the reasons described above, there is probable cause to believe that AYVAZYAN and TERABELIAN violated 18 U.S.C. § 1349 (Conspiracy to Commit Bank and Wire Fraud)

_____/S/_____
Justin Palmerton
Special Agent
Federal Bureau of
Investigation

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 20th day of
October, 2020.

_____/S/ CHARLES F. EICK_____
HONORABLE CHARLES EICK
UNITED STATES MAGISTRATE JUDGE

17

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          PLAINTIFF,<br><br>          v.<br><br>RICHARD AYVAZYAN,<br>   aka "Iuliia Zhadko,"<br><br>          DEFENDANT(S) | **WARRANT FOR ARREST**<br><br>ON COMPLAINT<br><br>          2:20-mj-05081-duty<br>CASE NO.: _____ |

To:   UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **RICHARD AYVAZYAN**, also known

as "Iuliia Zhadko," and bring him forthwith to the nearest Magistrate Judge to answer a

complaint charging him with Conspiracy to Commit Wire Fraud and Bank Fraud, in

violation of Title 18, United States Code, Section 1349.

REC: BY AUSA Julian L. André        [Detention]

|  |  |
|---|---|
| ___10/20/20_____<br>Date | Honorable Charles Eick<br><br>_____<br>Signature of Magistrate Judge |

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at (location): | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>MARIETTA TERABELIAN,<br><br>aka "Viktoria Kauichko,"<br><br>DEFENDANT(S) | **WARRANT FOR ARREST**<br><br>ON COMPLAINT<br><br>CASE NO.: _____ 2:20-mj-05081-duty |

To:   UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **MARIETTA TERABELIAN**, also

known as "Viktoria Kauichko," and bring her forthwith to the nearest Magistrate Judge to

answer a complaint charging her with Conspiracy to Commit Wire Fraud and Bank

Fraud, in violation of Title 18, United States Code, Section 1349.

REC: BY AUSA Julian L. André      [Detention]

_____ 10/20/20 _____
Date

_____
Honorable Charles Eick

Signature of Magistrate Judge

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at (location): | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**